CULPEPPER, Judge.
The plaintiff, Willie Bolton, seeks workmen’s compensation benefits for total and permanent disability arising out of accidental injuries to his back sustained while in the employment of Vancouver Plywood Company. The defendant, Employers Mutual Liability Insurance Company of Wisconsin, is the employer’s insurer. From an adverse judgment plaintiff appealed.
It is admitted that there was an accident on June 1, 1966, and that plaintiff sustained disabling injuries for which he was paid compensation at the rate of $35 per week through June 24, 1966. The sole issue on appeal is whether plaintiff was disabled beyond the date on which payments were stopped.
The general facts are that plaintiff, 38 years of age, was working as a clean-up man at the employer’s plywood plant. His principal duties were to pick up discarded scraps of plywood and place them in a large box which was later moved with a fork lift to a conveyor belt. The scraps were placed on the belt which ran out to a burner. On the day in question, plaintiff was unloading trash from the box to the conveyor when he stepped backwards onto a piece of plywood, which gave way and his left leg went down into a hole underneath.
Plaintiff worked the remaining 20 minutes until quitting time and went home to bed. The next morning he had pain in the lower part of his back and went to see Dr. Fred W. Thomas, a general practitioner in the Frasar Clinic of Many, Louisiana. They handle most of the industrial accident cases for the employer. This physician found bruises and swelling of the left leg between the knee and the ankle. Also muscle spasm in the lower back from which he diagnosed muscular strain in the lumbar area. Plaintiff was hospitalized from June 2, 1966 through June 15, 1966, and treated with muscle relaxing drugs, traction and medicine to reduce the.inflammation.
After his release from the hospital plaintiff next returned to see Dr. Thomas on June 22, 1966. This physician found plaintiff still had some evidence of muscle spasm and was not “doing well at that point” so he referred him to Dr. Carson Reed, an orthopedic surgeon of Shreveport.
*410 Dr. Reed saw plaintiff first on June 24, 1966. He found no muscle spasm, but he did find ossification of some of the ligaments, as well as arthritis, in the lower part of the spine. He diagnosed that tenderness found along the lower thoracic and entire lumbar spine was related to these pre-exist-ing conditions and stated that he could find no objective residual symptoms of the accident. This physician reported that plaintiff was able to return to his former employment.
Of course, it was on the basis of this report by Dr. Reed that workmen’s compensation payments were stopped on June 24, 1966.
Plaintiff went back to the treating physician, Dr. Thomas, in Many, on June 27, 1966. On this occasion Dr. Thomas thought that his “physical signs were decreasing” but he found plaintiff still disabled and prescribed Darvotran, a drug for pain.
Plaintiff was examined on July 11, 1966, at the request of his attorney, by Dr. Phillip Bonn, a neurosurgeon of Shreveport. On this date Dr. Bonn found muscle spasm in the cervical, thoracic and lumbar areas of the spine; also tenderness in these areas. X-ráys showed generalized arthritis of most of the spine. Dr. Bonn found no nerve root compression from a ruptured disc or otherwise. But he did diagnose “myoligamentous sprain of the cervical, thoracic and lumbar areas, with arthritic involvement.” It was his opinion that plaintiff was disabled.
Plaintiff didn’t return to see Dr. Thomas until August 4, 1966. He still complained of back pain but Dr. Thomas thought he had recovered to the point that he should try to return to work. Hence, the doctor requested the employer put plaintiff on “light work for two weeks”. Dr. Thomas explained that he recommended this in back cases in order to “gradually evolve them back into their usual duties.”
However, plaintiff did not return to work at the plant. He says he knew he couldn’t do the necessary bending.
On September 23, 1966 Dr. Thomas saw plaintiff for the last time. He was of the impression that on this occasion plaintiff “voluntarily” tightened the muscles in his back in an effort to simulate involuntary muscle spasms. But he found plaintiff had no residuals of the accident and should return to work.
On October 21, 1966 plaintiff was examined a second time by Dr. Reed, who again reported plaintiff had no residuals of the accident and could return to work.
There was lay testimony by two of plaintiff’s neighbors and a man whom plaintiff attempted to help by “measuring fence posts” as they were cut, during July or August of 1966. These lay witnesses related that plaintiff complained of pain in his back and appeared to be disabled. The trial judge obviously was not impressed with their testimony. For this reason, and for the further reason that a preponderance of the expert medical testimony favors the defendant, we need not resort to the lay testimony to reach a decision.
It is our conclusion that plaintiff has failed to sustain his burden of proving permanent and total disability. The testimony of Dr. Thomas, the treating physician, and of Dr. Reed, an orthopedic surgeon, whose specialty covers the medical question at issue, preponderates over the testimony of Dr. Bonn, a neurosurgeon.
However, we are unable to agree that plaintiff did not prove disability beyond the date workmen’s compensation payments were stopped on June 24, 1966. It is true that Dr. Reed said plaintiff could return to work as of this date. However, the treating physician, Dr. Thomas, who followed this case very closely, found some decreasing “physical signs” on June 27, 1966 and prescribed drugs for pain. He expressed the opinion plaintiff was disabled until at least August 4, 1966 and did not finally discharge plaintiff as able to return to work until the time of his last examination on September *411 23, 1966. Accordingly, the judgment appealed must be amended to award compensation until the latter date.
For the reasons assigned, the judgment appealed is amended to award plaintiff weekly benefits of $35 from the date of the injury, June 1, 1966 through September 23, 1966, subject to a credit for payments made through June 24, 1966, together with interest from date of judicial demand until paid. All costs in the lower court, as well as the costs of this appeal, are assessed against the defendant appellee.
Amended and affirmed.